ED ANDERSON V. L. F. WALTER, *as Administrator,*
*etc., et al.*

No. 15,528.   ( 99 Pac. 270.)

SYLLABUS BY THE COURT.

1. ADMINISTRATORS—*Appointment—Jurisdiction.*   The appointment by the probate court of a county of this state of an administrator of the estate of one who at the time of his death was an inhabitant and resident of another county thereof is wholly void, and a release of a mortgage belonging to the estate, executed by one so appointed as administrator under color of an order of such court, is without legal effect.

2. ESTOPPEL — *Heirs — Acquiescence in the Release of a Mortgage—Innocent Purchaser.*   Where upon the death intestate of the owner of a real-estate mortgage an order is made by the probate court appointing his widow as administratrix, and with her consent a further order is made that she release such mortgage on the ground that at the time of its execution the parties agreed that it was not to be enforced after his death, although such proceedings prove utterly void because taken in the wrong county she can not, after undertaking to release such mortgage on the record as administratrix, assert a right in her own behalf thereunder against one who purchases the land covered thereby in reliance upon such transaction.

Error from Kingman district court; PRESTON B. GILLETT, judge.   Opinion filed November 7, 1908. Modified.

*Brubacher & Conly,* for plaintiff in error.

*George L. Hay,* for defendants in error.

The opinion of the court was delivered by

MASON, J.:  On January 27, 1899, William Calhoun deeded a tract of land owned by him in Kingman county, where he then resided, to seven of his eight children, taking from them a note and mortgage on the property for $5000.   His wife joined in the deed, and a mortgage for $2500 was also taken payable to her, but this was properly released and cuts no figure in the litigation.   Humphrey Calhoun, one of the children, ac-

quired the interest of all the others by warranty deeds from them. On November 10, 1900, William Calhoun died intestate, while an inhabitant and resident of Sedgwick county. The 5000-dollar note and mortgage had been left by William Calhoun with a Michigan bank for safe-keeping. After his death his widow wrote to the banker asking that he send these papers to her. He answered declining to part with them until an administrator should be appointed. On March 2, 1901, an order was made by the probate court of Kingman county appointing her as administratrix. She then again applied for the note and mortgage and received them. The affidavit of death, the petition for the appointment of an administrator (signed by Humphrey Calhoun) and the letters of administration all recited that William Calhoun died while an inhabitant and resident of Sedgwick county.

Humphrey Calhoun then filed in the probate court an application asking that the administratrix be directed to discharge the mortgage, for the reason that at the time of its execution the mortgagee had agreed that on his death it should be released and that payment should not be required of the mortgagors. On October 26, 1901, a hearing was had on this application, and the court made an order reciting that Mrs. Calhoun was present and consented thereto and directing her to release such mortgage as administratrix. She at once executed a release in that capacity, and it was made of record in the office of the register of deeds.

On December 15, 1902, Ed Anderson bought the land from Humphrey Calhoun, relying upon these proceedings, and receiving a warranty deed purporting to convey a clear title. On April 22, 1904, L. F. Walter was appointed administrator of the estate of William Calhoun by the probate court of Sedgwick county. On May 11, 1904, he brought an action to foreclose the mortgage.

The district court held that all the proceedings in the

probate court of Kingman county were void for want
of jurisdiction, because William Calhoun was at the
time of his death a resident of Sedgwick county; that
this jurisdictional defect showed on the face of the
papers, and therefore Anderson was not· protected as
an innocent purchaser of a good record title; but that
the children of William Calhoun who had signed war-
ranty deeds to the property were thereby estopped to
assert any right under the mortgage. A decree was
therefore entered foreclosing the mortgage for the
benefit of any creditors of the estate, and of the widow
and the one child who had not signed a warranty deed
to the extent of their pro rata share as heirs of William
Calhoun, the court in the exercise of its equitable juris-
diction assuming full control of the settlement of the
estate in order to protect the interests of all persons
concerned. Anderson prosecutes error and asks that
he be adjudged to hold the land free from the mortgage.

The jurisdiction for the appointment of an adminis-
trator of an inhabitant of Kansas is in the probate
court of the county of which he is an inhabitant or
resident at the time of his death. (Gen. Stat. 1901,
§ 2806; *Ewing v. Mallison,* 65 Kan. 484, 70 Pac. 369,
93 Am. St. Rep. 299.) And since the record of the ap-
pointment of Mrs. Calhoun showed affirmatively that
her husband died an inhabitant and resident of Sedg-
wick county all the proceedings in the probate court of
Kingman county were void upon their face, and of no
force even when assailed collaterally. (See note on
effect of non-residence of decedent in 81 Am. St. Rep.
548.) Therefore the decision of the trial court must be
affirmed so far as it authorized the administrator to
enforce the mortgage for the benefit of any creditors
of the estate and of any heirs who had not forfeited
their right to share in the proceeds. The child of Will-
iam Calhoun who had signed no deed to the property
had done nothing to impair his standing as a benefi-
ciary, and was therefore entitled to protection. The

more difficult question is whether in virtue of her conduct in the matter the widow had not placed herself in the same category with the children who had warranted the title, and lost the right as against Anderson to have a lien on the land asserted in her behalf.

Mrs. Calhoun interposes a preliminary objection to this inquiry on the ground that the defense of equitable estoppel was not pleaded against her. Anderson did not in terms plead that she was estopped by her conduct to deny the validity of the release which she had executed as administratrix; but in asserting that the release was effective he set out in his answer all the attendant circumstances. The facts upon which the claim of estoppel is founded therefore appeared in the pleading, and the rule that a defense of that nature must be specially pleaded was substantially complied with.

It might be argued that in taking the position that the proceedings of the probate court of Kingman county were absolutely void Mrs. Calhoun puts herself in the attitude of having voluntarily entered a statement on the public record that the mortgage was no longer in force, and that such voluntary declaration, not having been made as administratrix, is binding upon her personally. But it must be assumed that she acted in good faith and under the belief that she was required to do what she did, and therefore the situation is not entirely the same as though she had acted of her own motion and for her own purposes. However, the transaction amounted to something more than a naked entry of a release of a mortgage by an unauthorized person. What was done in the probate court, although utterly void as a judicial proceeding, and concluding no one as an adjudication, nevertheless exhibited the theory upon which the entry of release was made. This theory was that there had been an understanding between the parties to this family affair that the death of William Calhoun should terminate all liability under the mort-

Anderson v. Walter.

gage. This theory Mrs. Calhoun, as an inheritor of a half interest in her husband's estate, was more than any one else concerned in resisting. But her conduct throughout amounted to an acquiescence in it. Besides signing the writing acknowledging the satisfaction of the mortgage, when the question whether it was to be enforced was raised in what she must have supposed to be such a manner as to conclude her if she failed to assert her rights she not only failed to protest —she even consented to the order of release. This must be deemed to have been such an acceptance on her part of the truth of the contention that the mortgage had spent its force as to preclude her asserting the contrary against one who parted with his money in reliance upon it. The situation is somewhat analogous to that arising when one by merely standing silently by at a sale where a stranger buys property is precluded thereafter from asserting title in himself. The case is within the spirit of the familiar rule thus expressed in volume 16 of the Cyclopedia of Law and Procedure, at page 791:

"Where a person with actual or constructive knowledge of the facts induces another by his words or conduct to believe that he acquiesces in or ratifies a transaction, or that he will offer no opposition thereto, and that other, in reliance on such belief, alters his position, such person is estopped from repudiating the transaction to the other's prejudice."

If instead of going into court Humphrey Calhoun, the owner of the land, had asked his mother to effectuate the purposes of William Calhoun by entering satisfaction of the mortgage as his widow, and she had consented, while a release so executed could not have validity as such no one can doubt that it would be binding upon Mrs. Calhoun. That the aid of the court was invoked to carry out what was already agreed to by the parties concerned, and that the formal entry of release was made in pursuance of a void order, does not greatly change the aspect of affairs. We conclude that Mrs.

50—78 KAN.

Calhoun, as well as the grantors in the warranty deeds, should have been cut off from the right to participate in the proceeds of the foreclosure. The cause will be remanded, that the judgment may be modified in this respect.