## IN RE ESTATE OF JESSE A. ROWE.

### N. I. DUHAIME, Administrator, Appellant, v. GEORGE A. ROWE, Appellee.

**EXECUTORS AND ADMINISTRATORS:** Appointment—Jurisdiction of Court—Residence of Deceased. The district court may not assume original probate jurisdiction over the estate of a deceased nonresident of the county. Section 225, Code, 1897.

**EXECUTORS AND ADMINISTRATORS:** Appointment—Jurisdiction of Court—"Residence." One who has a fixed abiding place in a particular county, with no present intention of leaving, and there lives with his family, is a "resident" of such county, within the meaning of the statute conferring jurisdiction to appoint administrators. Sec. 225, Code, 1897. Evidence reviewed, and held to show such residence in the county where administration was sustained.

*Appeal from Woodbury District Court.*—JOHN W. ANDERSON, Judge.

MONDAY, MARCH 12, 1917.

ACTION to remove an administrator on the ground that the deceased was not a resident of the county making the appointment, at the time of his death. Plaintiff's petition was dismissed in the court below, and he appeals.—*Reversed.*

*C. R. Metcalf,* for appellant.

*E. P. Farr,* for appellee.

1. EXECUTORS AND ADMINISTRATORS: appointment: jurisdiction of court: residence of deceased.

GAYNOR, C. J.—On the 20th day of April, 1915, one George A. Rowe was appointed by the clerk of the district court of Woodbury County, Iowa, administrator of the estate of one Jesse A. Rowe. Letters of administration were issued, and he duly qualified and gave bond, and entered upon the discharge of his duties.

On, the 25th day of May, 1915, Duhaime was duly appointed administrator of said estate by the district court of Monona County, and letters of administration were issued to him by the clerk of said court, and he duly qualified and gave bond. This action is brought by Duhaime as administrator to annul and set aside the appointment of Rowe, on the ground that Jesse A. Rowe, at the time of his death, was an actual resident of Monona County, and that the district court of Woodbury County had no jurisdiction

to make appointment, and its appointment is, therefore, null and void.

Section 225 of the Code provides:

"The district court of each county shall have original and exclusive jurisdiction    *    *    *    to grant administration upon the estates of all persons who at the time of their death were residents of the county."

It would seem that this statute is sufficiently explicit in its terms to negative the thought that any other county than the one in which the party resided at the time of the death had jurisdiction, or could obtain jurisdiction, to administer the estate of a deceased person, or to appoint administrators of such estates.   The statute expressly says:

"The district court of each county shall have original and exclusive jurisdiction    *    *    *    to grant administration upon the estates of all persons who at the time of their death were residents of the county."

When it is shown that a person is a resident of a certain county at the time of his death, that showing determines the court to which application should be made for the appointment of an administrator.   The statute by its terms limits the right of appointment to that court.   Any court without this jurisdictional fact to support its act is powerless to make such appointment, and any attempt to do so is void for want of jurisdiction.   The jurisdictional fact, the fact essential to the jurisdiction, is the fact of his residence at the time of his death.   Of course, there must be property to be administered upon, but the court that assumes to appoint an administrator to administer upon it must be the court of the county in which he resided at the time of his death.   If there was no jurisdiction in the district court of Woodbury County to make the appointment, its act in so doing was void, and no rights can be acquired under it.   As sustaining this, see *In re Estate of King,* 105 Iowa 320; *Erwin v. Fillenwarth,* 160 Iowa 210; *Cummings*

*v. Lynn,* 121 Iowa 344; *McFarland v. Stewart,* 109 Iowa 561.

2. EXECUTORS AND ADMINISTRATORS: appointment: jurisdiction of court: "residence."

It will be noted that the statute does not define what constitutes residence such as confers exclusive jurisdiction upon the district court of the county. In attempting to define the term "residence" or "resident," courts have encountered much difficulty, and we may say, from an examination of the authorities, that there is not any definition that applies to the facts of every case. But it seems to run through the authorities that the place where a man resides with his family is at least presumptively his place of residence. In some cases, it is suggested that a man's residence is a matter to be determined by his own intention; but it clearly appears that when one has a fixed residence at a particular place, a residence where he abides with his family, a home, an abiding place, with no present intention to leave it for another place, that is his residence for the time being, and if he dies there, that is his residence at the time of death. It is not possible to consider the term "residence" and disassociate it from the elements of home and habitation. A man's residence is his home, a habitation, fixed at any place, without a present intention of removing therefrom. Residence means a fixed or permanent abiding or dwelling place for the time being. Where one takes up his abode at a particular place, removes his family there, procures a dwelling house, installs his family in it, and surrounds himself by his property, that becomes his residence for the time, even though, perchance, he may have in his mind an idea or purpose not to remain there permanently. See *Fitzgerald v. Arel,* 63 Iowa 104; *County of Cerro Gordo v. County of Wright,* 50 Iowa 439; *Nugent v. Bates,* 51 Iowa 77, 79.

The only question here is whether the deceased was a resident of Monona County or Woodbury County at

the time of his death.  If he was not a resident of Wood-
bury County at that time, then the court of Woodbury
County had no authority to appoint an administrator of
that estate, and the application of the plaintiff should have
been sustained.

The evidence is that the deceased died or was killed
on April 19, 1915.  It appears that he removed to Whiting in
Monona County with his entire family, leased a home under
a written lease by which he secured the right of possession
and occupancy from the 1st day of March, 1915, to the 1st
day of March, 1916; that the deceased, his three sons and
two daughters, moved into this house about the 8th day of
March—moved from Woodbury County; that while in Wood-
bury County he had been engaged in farming as a renter;
that, when he rented this house in Whiting, he told his land-
lord that "he had quit farming—was going to bale hay and
straw."  He had a public auction in Woodbury County and
sold off all his farm implements.  He paid the rent on this
house and was living there at the time of his death, with
his family.  He told  his landlord he was going to live in
this house for a year; said nothing about moving back to
Woodbury County.  When he moved from Woodbury Coun-
ty, he brought all his household goods and was baling hay
and straw in Monona County when he was killed.  He told
his landlord that he had sold out in Woodbury County and
was going to live in Whiting.

His daughter testified that they moved into this house
early in March; that she kept house for her father; that
there were five children; that she was the oldest; that, in
March of that year, he had an auction sale on the farm and
sold pretty nearly all his farm implements, a few of the
horses, and moved down into Whiting; that he moved all
his household furniture; that he moved into the house
owned by the witness who just preceded her; that he was
living there until he was killed; that she and her father and

the other children lived in Monona County until he was killed; that he was killed April 19, 1915. She testifies, however, that it was the intention and expectation that her father would rent a farm in Woodbury County and return there in 1916, though it does not appear that she ever heard him say so. She gives it as her understanding that the family would go back to Woodbury County in the spring of 1916, to the farm that he left.

This evidence was objected to as calling for the conclusion of the witness. The objection should have been sustained. It is the mere conclusion of the witness. She was not called upon to state anything that her father said or did sustaining the conclusion expressed. Her expectation or her intention did not control the residence of the father.

The defendant, George A. Rowe, called on his own behalf, was permitted to answer the following question:

"Was it his intention (meaning the deceased), so far as you know, so far as he talked to you, to return and go onto one of the Randolph farms in the spring of 1916?"

Proper objections were made to this, but the witness was permitted to answer "Yes." His full answer was:

"He told me just before he was going to have his sale that financial troubles at the farm caused him to sell out and shorten his stock down and go down and put up hay on that contract job he had already taken for the season before. He had the contract to put up that hay, and he sold out in order to straighten up his financial difficulties."

Witness then gave as his conclusion that:

"He intended to return and work one of the farms in Woodbury County. He wanted to get near me."

It will be noted that this was the conclusion of the witness, and there is no statement of any fact upon which the conclusion was based. The fact that he had moved from Woodbury County, brought with him his family and his

goods, established a home in Monona County, in which he was living with his family at the time of his death—nothing further appearing—raises a presumption that that was his residence at the time of his death. Monona County was his home. He was living there with his family—had surrounded himself with all his property. There is no competent evidence of his intention to return to Woodbury County. The place where a man is domiciled with his family is presumptively his residence.

There is no competent evidence that he did not intend to make this his permanent home. There is no competent evidence that he ever intended to return to Woodbury County. There is affirmative evidence that he said he intended to live in Whiting. His residence was, therefore, in Monona County at the time of his death. The district court of Monona County had exclusive jurisdiction to appoint an administrator. The district court of Monona County did appoint an administrator. The district court of Woodbury County had no jurisdiction, under the statute, to make the appointment that it did. Plaintiff's application should have been sustained, and the prayer of his petition granted. The court erred in denying this, and the cause is reversed and remanded, with instructions to grant the prayer of the petition.—*Reversed and Remanded.*

LADD, EVANS and SALINGER, JJ., concur.